**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 19-cr-00150-RM

UNITED STATES OF AMERICA,

        Plaintiff,

v.

     **1.** JUSTIN BOWEN NEISLER,

        Defendant.

---

## PLEA AGREEMENT

---

The United States of America, by and through Patricia Davies and Alecia Riewerts, Assistant United States Attorneys for the District of Colorado, and the defendant, Justin Bowen Neisler ("Neisler"), personally and through counsel, Martin Stuart, submit the following Plea Agreement.

## I.   PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties understand that any recommendations that a particular sentence or sentencing range be imposed pursuant to this Plea Agreement are not binding on the Court. Because the government is agreeing to dismiss the Indictment as to this defendant, the defendant will be permitted to withdraw his plea of guilty if this Court rejects this plea agreement pursuant to Rule 11(c)(1)(A) and (c)(5) of the Federal Rules of Criminal Procedure.

Court's Exhibit

1

**A.**     **Defendant's Obligations**

**1.**     **Count of Conviction**

The defendant agrees to plead guilty to Count One of the Information, charging a violation of 18 U.S.C. § 2251(a) and (e) – Production of Child Pornography. The defendant agrees to admit the Forfeiture Allegation contained in the Information.

**2.**     **Waiver of Appeal**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 46; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced

2

by prosecutorial misconduct. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement.

**3.** **Defendant's Abandonment of Right, Title, and Claim to Seized Property**

The United States of America and the defendant hereby agree that any property subject to forfeiture pursuant to 18 U.S.C. § 2253, seized from the defendant, and currently in the custody and/or control of the Federal Bureau of Investigation (FBI), was properly seized and that such property constitutes evidence, contraband, or fruits of the crimes to which the defendant has pleaded guilty. As such, the defendant hereby relinquishes all claims, title, and interest the defendant has in such property, specifically: (1) a MacBook Air A1534 laptop computer bearing serial number C02QP6CNGCN3; (2) an Apple iPhone, Serial number GONVR7L6JCL9; (3) a Fab Quality HD Spy Pen Camera, no serial number with Micro SD Card 16GB, serial number AK15H2C1803; (4) a Western Digital my passport external hard drive, 304GB, bearing serial number WX30A8931311; and (5) an Apple AirPort Time Capsule A1409 containing Western Digital hard drive, 2TB serial number WCC1H0547554, to the United States of America with the understanding and consent that the FBI, or other appropriate agency, is to destroy the property described above forthwith without further obligation or duty whatsoever owing to the defendant or any other person.

As part of the Plea Agreement in this case, the defendant hereby states under penalty of perjury that the defendant was the sole and rightful owner of the previously referenced property, and that the defendant hereby voluntarily abandons all right and claim to this property.

3

### 4.     Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2253, whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees, or elsewhere.  The assets to be forfeited specifically include, but are not limited to: (1) a MacBook Air A1534 laptop computer bearing serial number C02QP6CNGCN3; (2) an Apple iPhone, Serial number G0NVR7L6JCL9; (3) a Fab Quality HD Spy Pen Camera, no serial number with Micro SD Card 16GB, serial number AK15H2C1803; (4) a Western Digital my passport external hard drive, 304GB, bearing serial number WX30A8931311; and (5) an Apple AirPort Time Capsule A1409 containing Western Digital hard drive, 2TB serial number WCC1H0547554.  The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.  The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

### B.     Government's Obligations

### 1.     Dismissal of Additional Charges

If the defendant enters an unconditional plea of guilty to Count One of the Information and otherwise fulfills all obligations outlined above, the government agrees

to dismiss the Indictment at the time of sentencing, and agrees not to charge the defendant with any other violations of law now known to the United States Attorney's Office for the District of Colorado.

**2.      Sentencing Position**

The government agrees to recommend a sentence of imprisonment that is no more than 25 years' imprisonment.  However, the government is not bound to recommend any particular term of supervised release.

**3.      Acceptance of Responsibility**

If the defendant engages in no conduct that otherwise implicates § 3C1.1, the government agrees that a 3 point reduction in the offense level for acceptance of responsibility, pursuant to § 3E1.1, is appropriate and agrees to make the appropriate motion at the appropriate time.

## II.      ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered, the crime of Production of Child Pornography, 18 U.S.C. § 2251(a), are as follows:

*One*:  That the defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct;

*Two:*  That the defendant acted with the purpose of producing a visual depiction of such conduct; and

*Three*:  That the defendant knew or had reason to know that the visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or that the visual

depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer; or that the visual depiction was actually transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.[1]

"Minor" means any person under the age of eighteen years.[2]

"Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means that is capable of conversion into a visual image, and data that is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.[3]

"Sexually explicit conduct" means actual or simulated:

1.  sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; or

2.  bestiality; or

3.  masturbation; or

4.  sadistic or masochistic abuse; or

5.  lascivious exhibition of the anus, genitals or pubic area of any person.[4]

III.  **STATUTORY PENALTIES**

Based on the defendant's criminal history known at this time, the applicable maximum statutory penalty for a violation of 18 U.S.C. § 2251(a) is not less than 15

---

[1] 18 U.S.C. § 2251(a); Fifth Circuit Criminal Pattern Jury Instruction 2.84 [modified]. The Tenth Circuit does not have a pattern instruction for this crime.
[2] 18 U.S.C. § 2256(1).
[3] 18 U.S.C. § 2256(5).
[4] 18 U.S.C. § 2256(2)(A)(v).

years' imprisonment, not more than 30 years' imprisonment, not more than a $250,000 fine, or both. 18 U.S.C. § 2251(a). Pursuant to 18 U.S.C. § 3583(k), because the defendant is pleading guilty to violating 18 U.S.C. § 2251(a), the term of supervised release is not less than 5 years and up to a term of life. Defendant will be required to pay a $100 special assessment fee. Defendant will be required to pay a $5,000 special assessment unless the Court finds that the defendant is indigent. For the offense that occurred after December 7, 2018, defendant will also be required to pay a special assessment of no more than $50,000 per count for his conviction for child pornography production as defined by 18 U.S.C. Section 2259(c)(1), which includes offenses under 18 U.S.C. Section 2251(a) through (c), 2251A, 2252A(g) (in cases in which the series of felony violations involves at least 1 of the violations listed in this subsection), 2260(a) or any offense under chapter 109A or chapter 117 that involved the production of child pornography (as such term is defined in section 2256).

The parties do not believe the following provisions are applicable, but if the defendant has been previously convicted under Chapters 110, 71, 109A, 117, or under 18 U.S.C. § 1591, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, the penalty for a violation of 18 U.S.C. § 2251(a) is not less than 25 years nor more than 50 years imprisonment, not more than $250,000 fine, or both; with two such convictions, the penalty for a violation of 18 U.S.C.§ 2251(a)

is not less than 35 years nor more than life imprisonment, not more than $250,000 fine, or both.

## IV.    COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

### A.    Future Violations of Supervised Release

If supervised release is imposed, a violation of any conditions of probation or supervised release may result in a separate prison sentence and additional supervision. If a condition of release is violated, the defendant may be sentenced to up to 5 years without credit for pre-release imprisonment or time previously served on post-release supervision; if the defendant commits any criminal offense under Chapter 109A, 110, or 117, or Title 18, United States Code, Sections 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the defendant may be sentenced to not less than 5 years and up to the maximum term of imprisonment for the offense, as set forth above.

### B.    Registration under the Sex Offender Registration and Notification Act

The defendant has been advised and he understands that under the Sex Offender Registration and Notification Act, a federal law, and pursuant to 18 U.S.C. § 3583(d), upon his release from prison and as a condition of his supervised release, if any, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout his life.  The defendant understands he must register as a sex offender and must keep the registration current with the state sex offender registration agency in each of the following jurisdictions: where he was

8

convicted, where he resides, where he is employed, and where he is a student. The defendant understands that the requirements for registration include providing his name, residence address, and the names and addresses of any places where he is or will be an employee or a student, and information relating to intended travel outside the United States, among other information. The defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three business days after any change of name, residence, employment, or student status. The defendant shall comply with requirements to verify periodically in person his sex offender registration information. The defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for violations of applicable state law or 18 U.S.C. § 2250, a federal law, which is punishable by a fine or imprisonment, or both. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction.

### C.    Restitution

Defendant acknowledges that pursuant to 18 U.S.C. § 2259(a), the Court is required to order restitution for the full amount of the victims' compensable losses as defined at 18 U.S.C. § 2259(c)(2) and (4) as may be proved by the government or stipulated to by the parties. Defendant will be required to pay restitution for the full amount of the victims' losses to all victims of the offense(s) to which defendant is pleading guilty. For purposes of this paragraph, the term "victim" is defined in 18 U.S.C. § 2259(c)(4), and the term "full amount of the victims' losses" is defined in 18 U.S.C.

§ 2259(c)(2). Defendant further understands the amount of loss sustained by each victim will be determined during the course of preparation of the presentence investigation report.

Defendant acknowledges that the Court may not decline to award restitution because of the defendant's economic circumstances or the fact that the victims have, or are entitled to, receive compensation for their injuries from the proceeds of insurance or any other source. Defendant agrees to cooperate in the investigation of the amount of loss and the identification of victims. Defendant understands full restitution will be ordered regardless of defendant's financial resources. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw defendant's guilty plea. Defendant further agrees to comply with any restitution order entered at the time of sentencing. Defendant agrees to cooperate in efforts to collect the restitution obligation, by any means the United States deems appropriate. Defendant understands imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action. Defendant agrees any restitution imposed will be non-dischargeable in any bankruptcy proceeding and defendant will not seek a discharge or a finding of dischargeability as to the restitution obligation.

V.     **STIPULATION OF FACTS**

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this Plea Agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below

which are pertinent to those considerations and computations. To the extent the parties

disagree about the facts set forth below, the stipulation of facts identifies which facts are

known to be in dispute at the time of the execution of the Plea Agreement.

The statement of facts herein does not preclude either party from presenting and

arguing, for sentencing purposes, additional facts or factors not included herein, which

do not contradict the facts to which the parties have stipulated, and which are relevant

to the guideline computation under § 1B1.3, or to the sentencing factors found in §

1B1.4, 18 U.S.C. § 3553(a), or to this Court's overall sentencing decision. In

"determining the factual basis for the sentence, the Court will consider the stipulation of

the parties, together with the results of the presentence investigation, and any other

relevant information." § 6B1.4 Comm.

The parties agree that the government's evidence would be:

On November 2, 2018, the Colorado Springs Police Department Internet

Crimes Against Children (ICAC) Unit received CyberTipline report 41722084,

which contained information forwarded by Tumblr, Inc. (Tumblr) to the National

Center for Missing and Exploited Children (NCMEC).[5] The CyberTipline report

included 32 images and/or videos of child pornography uploaded by Justin Neisler

to his Tumblr account using email auburn52mh@yahoo.com. NCMEC later sent

---

[5] Tumblr and other Internet Service Providers (ISPs) that suspect child pornography has been
stored or transmitted on their systems can report that information to NCMEC in a cybertip. The
cybertip to NCMEC may include information about the incident type and time, identifiers
associated with the incident, and any files that the ISP collected in connection with the activity.
Using publicly available search tools, NCMEC then attempts to locate where the activity
occurred based on the information the ISP provides such as IP addresses. NCMEC then
forwards the information from the ISP, including any related cybertips, to law enforcement in the
relevant jurisdiction.

six (6) additional CyberTipline reports to law enforcement, based on information

from Tumblr that Tumblr accounts, later determined to belong to Justin Neisler,

had been used on multiple occasions between October 15, 2018 through

December 13, 2018, to upload child pornography.[6] Based on subscriber

information, investigators determined that the relevant IP address for the child

pornography uploaded between 10/15/2018 through 12/13/2018 resolved to

Comcast user Justin Neisler at 255 S. Harrison Street, Unit A302, Denver, CO

80209.

On March 13, 2019, FBI agents and Task Force officers executed a search

warrant at Justin Neisler's residence. Agents advised Neisler that the search

warrant being executed pertained to child pornography. When the FBI and Task

Force officers questioned Neisler, they took handwritten notes that were later used

to write their reports. There was no audio or video recording of the officers'

questioning of Neisler. Neisler disputes the accuracy of some statements agents

later attributed to him in the officers' reports. Those disputes are identified in this

document. Neisler subsequently provided the following information, in substance:

   a.     Neisler has never touched or harmed children. Neisler had been

---

[6] Samples of images reflected in the CyberTipline reports include:
"178415258814_0_inline_image.gif," which shows a prepubescent naked male lying down
with an adult male penis inserted in his anus; video "180479866939_0_video.mp4,"
which depicts a prepubescent boy naked from the waist down with an adult male
inserting his penis in the boy's anus (the adult male also appears to apply lubricant to his
penis and reinsert his penis in the boy's anus) and masturbates the boy's penis with his
right hand; and video "180841241681_0_video.mp4," which shows a prepubescent boy
lying down with an adult male touching the boy's penis over his underwear, the adult
male pulling his own underwear down and touching his own penis, and the adult male
kissing and sucking the boy's testicles and placing his mouth over the boy's penis.

looking at child pornography since he was approximately eleven years old. Neisler had never told anyone that he liked child pornography, with the exception of one person he met online. Neisler kept child pornography on his cellular telephone, hard drive devices, and computer. The child pornography includes babies being sexually assaulted,[7] although Neisler has more pornography featuring minors he guessed to be eleven or twelve years old.

   b.    Neisler acknowledged that during the past several months, he had had multiple Tumblr accounts, including the Tumblr account associated with the email address auburn52mh@yahoo.com. Neisler re-blogged child pornography through his Tumblr accounts; that is, Neisler located child pornography images, and linked those images to his Tumblr accounts, thus making the child pornography available for others to view.

   c.    Neisler said part of his job as a medical professional is to examine minors. Neisler said he never touched his minor patients inappropriately, but he did video two or three children without their knowledge or consent. Neisler advised that the children he videotaped were between ages nine and eleven, and that the last time he had videotaped a minor patient without his knowledge or consent was approximately in late February 2019 at Centura Health.

   d.    Neisler explained that during his medical examinations, his patients were naked but that he felt that their nudity was appropriate given it was a wellness exam. Neisler acknowledged in response to questioning by agents that if other physicians were asked about the propriety of his minor male patients being

---

[7] Neisler asserts that there **may** be child pornography including babies.

naked throughout a wellness exam, probably none of the other physicians would think it was appropriate.[8] Neisler explained that one of the children who was eleven years old asked Neisler if the child was being filmed, and Neisler responded to that child that he was not being filmed.

e. Neisler stated he touched his patients' genitalia, but that this was normal procedure for a wellness exam. He described that he felt excited while he was touching the minor children,[9] but could not remember if he was aroused while he was touching the minor children. Neisler explained that he video recorded the minor children so he could bring the videotapes home and pleasure himself sexually while watching the videos. Neisler said he had been worrying about getting arrested for twenty years.[10] Neisler stated in substance that he took his first photos of nude boys in high school when he secretly filmed teammates on sports teams. (Based on agents' investigation, it does not appear that Neisler made any other recordings of nude minors during the time between his secret filming in high school and the conduct in this case). Neisler states, but the agents' notes do not reflect, that Neisler told agents during the March 13, 2019 interview that he had not filmed any other nude children since high school and until his filming as charged in this case. Neisler described the boy he videotaped in late February 2019 as eleven years old, and explained that the youngest patient he

---

[8] Neisler asserts that he stated that ten other physicians probably would not have done the wellness exam the same way he did.

[9] Neisler asserts that when he told the agents during the March 13 interview that he was excited, he meant that he was excited about filming the children.

[10] Neisler disputes that he made this statement during the interview but admits he told agents he was afraid that "his dirty laundry would be aired:" that is, that others would learn he viewed child pornography.

14

had ever videotaped was approximately nine years old. Neisler usually videotaped patients in that age range because they were old enough that their parents were not present in the exam room.

        f.     A Spy Camera Pen manual was located during the search and, when questioned, Neisler described the location of the Spy Camera Pen. In response to agents' questions, Neisler conceded that there might be more videos of minor patients on the Spy Camera Pen than the two to three Neisler had earlier mentioned. Neisler then stated that he had videotaped approximately eight to ten minor children during the course of his exams of them. Neisler then provided consent for and access credentials for several electronic devices and various online accounts.

        g.     Agents seized under warrant: (1) a MacBook Air A1534 laptop computer bearing serial number C02QP6CNGCN3; (2) an Apple iPhone, Serial number GONVR7L6JCL9; (3) a Fab Quality HD Spy Pen Camera, no serial number with Micro SD Card 16GB, serial number AK15H2C1803; (4) a Western Digital my passport external hard drive, 304GB, bearing serial number WX30A8931311; and (5) an Apple AirPort Time Capsule A1409 containing Western Digital hard drive, 2TB serial number WCC1H0547554.

     FBI computer forensic examiners subsequently reviewed the items listed in paragraph h, immediately above. Investigators later received records pertaining to an iCloud account belonging to Neisler. From their review of the seized items and the iCloud account content, investigators found the following video-recordings pertaining to Count 1 of the Information, taken by Neisler using the camera on his

Apple iPhone or the Spy Camera pen, both of which were manufactured outside the state of Colorado:

1. IMG_0367.MOV was surreptitiously filmed by Neisler on June 1, 2018, and records Neisler performing a medical examination on Minor #1. In the recording, Neisler has Minor #1 lower his underwear and bend over an examination table. Neisler then spreads the cheeks of Minor #1's buttocks, and Neisler apparently inserts his gloved finger in Minor #1's anus, while secretly recording via his Apple iPhone. The Apple iPhone camera films Minor #1's anus[11] and Neisler's examination thereof. Minor #1 was 16 years old at the time of Neisler's June 1, 2018 video recording. Neisler made this recording in Colorado, and investigators located the video file in Neisler's Apple iCloud account.

2. MOVI0004.AVI was surreptitiously filmed by Neisler on June 13, 2018, and records Neisler performing a medical examination on Minor #2. In the recording, Minor #2 is naked, and Neisler is recording via a Spy Camera Pen. Neisler's filming focuses on Minor #2's genitalia, and later, a close-up of Neisler spreading the cheeks of Minor #2's buttocks. Minor #2 was 11 years old at the time of Neisler's June 13, 2018 video recording. Neisler made this recording in Colorado, and the video file was located by investigators on Neisler's MacBook Air laptop.

3. IMG_0257.TRIM.M4V was surreptitiously filmed by Neisler on August 13, 2018, and records Neisler performing a medical examination on Minor #3.

_____

[11] Neisler states that the film captures Minor #1's buttocks but not his anus.

*(handwritten annotation in margin: "in an attempt to film the pubic area and genitalia of Minor #1, MS [initials] PD AVR")*

In part of the recording, Minor #3 is naked and lying down on a table while Neisler is examining and manipulating Minor #3's penis, including Neisler measuring Minor #3's penis[12] with a measuring tape. Neisler's filming focuses on Minor #3's genitalia via a concealed iPhone camera. Minor #3 was 11 years old at the time of Neisler's August 13, 2018 video recording. Neisler made this recording in Colorado, and the video file was located by investigators on Neisler's MacBook Air laptop.

4. IMG_0364.TRIM.MOV was surreptitiously filmed by Neisler on August 24, 2018, and records Neisler performing a medical examination on Minor #4. In part of the recording, Minor #4 is naked and standing immediately in front of Neisler while, with both ungloved hands,[13] Neisler examines and manipulates Minor #4's penis and testicles. Neisler's filming focuses on Minor #4's genitalia via a concealed iPhone camera. Minor #4 was 11 years old at the time of Neisler's August 24, 2018 video recording. Neisler made this recording in Colorado. Investigators located the video file IMG_0364.TRIM.MOV in Neisler's Apple iCloud account, and located the same video content, but titled IMG_0390_MOV on Neisler's Apple iPhone.

5. IMG_1970.MOV was surreptitiously filmed by Neisler on February 28, 2019, and records Neisler performing a medical examination on Minor #5. During the recording, Minor #5 asks "no cameras in here, right?" and Neisler responds, "no cameras – just us guys." Neisler then directs naked Minor #5 to lie on the examination table, and films with his concealed

---

[12] Neisler asserts he is measuring the boy's testicles not his penis.
[13] Neisler asserts that examining without gloves is age appropriate for a pre-pubescent child.

iPhone camera while he examines and manipulates Minor #5's penis with both ungloved hands. Neisler is shown in this part of the recording and has an apparent erection. Neisler then conducts a further examination of Minor #5's penis immediately in front of the camera, and then inspects Minor #5's anus. Minor #5 was 11 years old at the time of Neisler's February 28, 2019 video recording. Neisler made this recording in Colorado, and investigators located this video file on his Apple iPhone.

In each of the video-recordings described in paragraphs 1 – 5 above, Neisler was the only person in the examination room with the minor victim, generally, because he had asked the accompanying parent or family member to step out and leave the patient alone with Neisler. Neisler asserts that he was trained to ask parents to leave the examination room during a portion of the examination so he could have a frank discussion about topics the child might not feel free to talk about with parents, such as sex and drugs. In addition to the videos described in Section V, ¶¶ 1-5, above, investigators located other videos Neisler filmed of his examinations of 16 other patients,[14] and those videos depict male patients aged between approximately 12 and 24 at the time of filming, with eight in the 11 to 13 year old range. (Two of the patients remain unidentified). All of the identified minor victims have been forensically interviewed and none reports any off-camera hands-on contact by Neisler. Further, based on the agents' investigation, it appears that Neisler kept the child pornography videos he

---

[14] Neisler states that of the 16 patients, 2 were adults and 14 were minors, and that, of the 14 minors, 7 videos showed genitals and 7 did not.

produced only for himself and did not distribute the video-recordings referenced in this agreement.

Further, the FBI's forensic review of Neisler's electronic devices revealed approximately 6,600 still images and 1,725 videos of child pornography, many depicting minor males engaged in anal or oral sexual acts with adult males.

Defendant admits that the production offense involved Minor #1, Minor #2, Minor #3, Minor #4, and Minor #5; that Minor #1 had attained the age of 16 years but that Minors #2 through #5 had not attained the age of 12 years at the time of the offense; that the production offense related to Minor #2 through Minor #5 involved the lascivious exhibition of the minor victims' genitalia; that the minor victims were in the custody, care or supervisory control of the defendant at the time of the offense; that the defendant engaged in a pattern of activity involving prohibited sexual conduct with a minor; and that the child pornography was produced or transmitted using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer or had actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce.

VI.    **ADVISORY GUIDELINE COMPUTATION**

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth

19

below their respective estimates of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters that are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. Although the government is obligated to make the sentencing recommendation tied to an offense level of 46, as set forth in the Agreement section above, the parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may make legal or factual arguments that affect the estimate below.

## GOVERNMENT'S ESTIMATE OF THE APPLICABLE ADVISORY USSG RANGE

**Offense Level for Count One, Minor #1**: The base guideline is § 2G2.1.

A. The base offense level for this offense is **32**. § 2G2.1(a).

B. Because the offense involved the commission of a sexual act or sexual contact, there is an increase of **+2** levels. § 2G2.1(b)(2)(A).[15]

C. Because the minor was in the custody, care or supervisory control of the defendant, there is an increase of **+2** levels. § 2G2.1(b)(5).

D. The offense level for Count One, Minor #1 is 36**.**

**Offense Level for Count One, Minor #2**: The base guideline is § 2G2.1.

A. The base offense level for this offense is **32**. § 2G2.1(a).

B. Because the offense involved a minor who had not attained the age of twelve

---

[15] Neisler disputes that there was a "sexual act or sexual contact" pursuant to § 2G2.1(b)(2)(A) with respect to Minor #1 through Minor #5, and thus disputes that for any of the Minors, this 2 level upward adjustment applies. Thus, according to Neisler, the USSG calculation is as follows: the offense level for Minor #1 is 34; the offense level for Minors #2, #3, #4, and #5 is 38. The combined offense level for Minors #1 through #5 is 42, pursuant to §§ 2G2.1(d)(1) and 3D1.4. With the 3 level downward adjustment for acceptance of responsibility, pursuant to § 3E1.1, the offense level is 39. With the 5-level addition under § 4B1.5(b), by Neisler's calculation, the total adjusted offense level is 44.

years, there is an increase of **+4** levels.  §2G2.1(b)(1)(A).

C. Because the offense involved the commission of a sexual act or sexual contact, there is an increase of **+2** levels.  § 2G2.1(b)(2)(A).

D. Because the minor was in the custody, care or supervisory control of the defendant, there is an increase of **+2** levels.  § 2G2.1(b)(5).

E. The offense level for Count One, Minor #2 is 40.

**Offense Level for Count One, Minor #3**: The base guideline is § 2G2.1.

A. The base offense level for this offense is **32**.  § 2G2.1(a).

B. Because the offense involved a minor who had not attained the age of twelve years, there is an increase of **+4** levels.  §2G2.1(b)(1)(A).

C. Because the offense involved the commission of a sexual act or sexual contact, there is an increase of **+2** levels.  § 2G2.1(b)(2)(A).

D. Because the minor was in the custody, care or supervisory control of the defendant, there is an increase of **+2** levels.  § 2G2.1(b)(5).

E. The offense level for Count One, Minor #3 is 40.

**Offense Level for Count One, Minor #4**: The base guideline is § 2G2.1.

A. The base offense level for this offense is **32**.  § 2G2.1(a).

B. Because the offense involved a minor who had not attained the age of twelve years, there is an increase of **+4** levels.  §2G2.1(b)(1)(A).

C. Because the offense involved the commission of a sexual act or sexual contact, there is an increase of **+2** levels.  § 2G2.1(b)(2)(A).

D. Because the minor was in the custody, care or supervisory control of the defendant, there is an increase of **+2** levels.  § 2G2.1(b)(5).

E. The offense level for Count One, Minor #4 is 40.

**Offense Level for Count One, Minor #5**: The base guideline is § 2G2.1.

A. The base offense level for this offense is **32**.  § 2G2.1(a).

B. Because the offense involved a minor who had not attained the age of twelve years, there is an increase of **+4** levels.  §2G2.1(b)(1)(A).

C. Because the offense involved the commission of a sexual act or sexual contact, there is an increase of **+2** levels.  § 2G2.1(b)(2)(A).

D. Because the minor was in the custody, care or supervisory control of the defendant, there is an increase of **+2** levels. § 2G2.1(b)(5).

E. The offense level for Count One, Minor #5 is 40.

## Calculation for Multiple Victims under 2G2.1(d)(1):

A. Offense level for the offense involving Minor #1 is 36.

B. Offense level for the offense involving Minor #2 is 40.

C. Offense level for the offense involving Minor #3 is 40.

D. Offense level for the offense involving Minor #4 is 40.

E. Offense level for the offense involving Minor #5 is 40.

One Unit is counted for Minor #2. One Unit is counted for Minor #1, as that Group is 4 levels less serious. One Unit is counted for each of Minor #3, Minor #4, and Minor #5, as each of those Groups is the same level of seriousness as Minor #2. The total number of Units is 5. Five Units results in a 4 level increase to the Group with the highest offense level. § 3D1.4.

F. Therefore, by the government's USSG calculation, the combined offense level for this offense involving Minor #1, Minor #2, Minor #3, Minor #4 and Minor #5, as calculated under § 3D1.4, is **44**.

G. No role-in-offense, obstruction and/or multiple count adjustments apply.

H. Defendant should receive a decrease in the offense level by **-2** based upon his acceptance of responsibility. § 3E1.1(a). Defendant should also receive a decrease in the offense level by **–1** for timely notifying the government. § 3E1.1(b). At sentencing, the government will make the appropriate motion for the one-point reduction. Assuming the acceptance of responsibility credit, defendant's offense level is reduced to **41**.

I. Because the defendant is a repeat and dangerous sex offender against minors,

there is an increase of **+5** levels.  § 4B1.5(b).

J.  According to the government's USSG calculation, the total adjusted offense level for Count One of the Information is **46.**

**Criminal History Category**

K.  The parties acknowledge and agree that the estimation regarding Defendant's criminal history is tentative.  Defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court.  Defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final guideline range and result in a longer term of imprisonment.  Based upon the facts known at this time regarding Defendant's criminal history, the parties believe that Defendant falls within Criminal History Category ("CHC") I.  § 4A1.1.

L.  The career offender adjustment does not apply.

**Guideline Ranges**

M.  The guideline range resulting from the government's estimated offense level of **46** and the estimated criminal history category of Criminal History Category I is life imprisonment.  Life imprisonment applies from the bottom of CHC I to the top of CHC VI.  However, the guideline range would not exceed, in any case, the statutory maximum of **360** months' imprisonment applicable to the count of conviction.[16]

N.  Pursuant to § 5E1.2, assuming the estimated offense level of **46**, the fine range

---

[16] The guideline range resulting from the defendant's estimated offense level of **44** and the estimated Criminal History Category I is also life imprisonment.  However, the guideline range would not exceed, in any case, the statutory maximum of **360** months' imprisonment applicable to the count of conviction.

for this offense would be $50,000 to $500,000, plus applicable interest and penalties.[17]

O. Pursuant to 18 U.S.C. § 3583(k) and § 5D1.2(b)(2), if the Court imposes the term of supervised release, that term shall be at least 5 years but not more than life.

**VII.  ENTIRE AGREEMENT**

This document states the parties' entire agreement.  There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied.  In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 1-4-2020 _____

Justin Bowen Neisler
Defendant

Date: 1-9-2020 _____

Martin Stuart
Attorney for Defendant

Date: 1/9/2020 _____

Patricia Davies
Assistant United States Attorney

Date: 1/9/2020 _____

Alecia Riewerts
Assistant United States Attorney

---

[17] The fine range under the defendant's USSG range is the same as the government's.